Earnest E. TAYLOR, Appellant,

v.

WALSTON & CO., INC., Appellee.

No. 18189.

Court of Civil Appeals of Texas, Dallas.

Oct. 25, 1973.

Rehearing Denied Nov. 15, 1973.

**614**

Thomas A. Melody, Dallas, for appellant.

Hal Potts, Miller, Blankenship & Potts, Dallas, for appellee.

BATEMAN, Justice.

The appellee Walston & Co., Inc., herein called Walston, recovered a judgment against appellant Earnest E. Taylor for damages for conversion of 66 shares of corporate stock. Taylor appeals on two points of error: (1) that appellee is not entitled to recover because of its violation of federal law regulating the securities industry; and (2) that its cause of action is barred by the two year statute of limitation. We affirm.

The essential facts are undisputed. On April 2, 1968 Walston, a securities dealer, at Taylor's request sold 100 shares of the common stock of Redman Industries, Inc., herein called Redman, for Taylor's account and on April 24, 1968 Taylor delivered the certificates to Walston. On April 16, 1968 Redman declared a stock dividend of 4 for 3 to the owners of record on May 3, 1968 with an ex-dividend date of April 29, 1968. This entitled the owner of the 100 shares to 33 additional shares. The 33 dividend shares were issued and sent by Redman to Taylor.[1] In February 1969 Redman declared another stock dividend of 2 for 1. As Taylor appeared to be the owner of 33 shares, a certificate for the second stock dividend of 33 shares was sent to him. He thus appeared on Redman's records as owner of 66 shares and received cash dividends of $20.16 thereon.

In April 1969 Walston requested Taylor to return the 66 shares of Redman stock, and the cash dividends pertaining thereto. After several telephone conversations and other communications between them concerning the matter Taylor by letter dated July 21, 1969 refused to return them. On July 24, 1969 Walston purchased 66 shares of Redman stock on the open market at a cost of $2,546.08. On September 5, 1969 Walston wrote to Taylor detailing the transactions and demanding reimbursement of said $2,546.08 and the dividends of $20.-16, or a total of $2,566.24. On April 12, 1971, Walston brought this suit to recover the latter sum.

There was no jury, and after rendering judgment for Walston for the amount sued for, the trial court filed findings of fact and conclusions of law. The findings of fact were substantially as stated above. The trial court concluded as a matter of law that Taylor was not the owner of nor entitled to receive the 66 shares nor the cash dividends arising therefrom after April 2, 1968, the date of his sale of the 100 shares; that Walston's purchase of the 66 shares on July 24, 1969 was not unreasonably delayed considering the communications between the parties from April 1969 through July 21, 1969; that Walston's conduct was not such as to be charged with laches; that its cause of action accrued in July 1969 and its suit was filed within two years thereafter; that Taylor had no lawful right to retain the 66 shares nor the cash dividends arising therefrom, but converted them wrongfully and has been unjustly enriched to plaintiff's damage in the sum of $2,566.24.

---

1. There was undisputed testimony that it takes two or three weeks to get stock transferred to the purchaser's name on the corporation's stock record after it is delivered to the broker. Had this transfer been accomplished at any time during May 1968 it would have been in accordance with normal business practice. This is the only explanation we find in the record for the first 33 dividend shares having been sent to Taylor instead of the purchaser.

■ Taylor does not question the sufficiency of the evidence to support these findings of fact, but under his first point of error contends that by not buying in the 66 shares within seven days after Taylor failed to deliver the shares Walston in effect extended illegal credit to Taylor and by doing so violated the Securities Exchange Act of 1934, § 7(c), 15 U.S.C.A. § 78g(c), and Regulation T promulgated thereunder. The Act provides in pertinent part as follows:

(c) It shall be unlawful for any member of a national securities exchange or any broker or dealer, directly or indirectly, to extend or maintain credit or arrange for the extension or maintenance of credit to or for any customer—

(1) on any security (other than an exempted security), in contravention of the rules and regulations which the Board of Governors of the Federal Reserve System shall prescribe under subsections (a) and (b) of this section; * * *

This regulatory legislation was enacted in the depression era which followed the stock market crash of 1929. The declared purpose of the Act and the regulations under it was to limit the amount of credit that could be channeled into the stock market. See Note, 49 Tex.L.Rev. 192 (1970).

■ We see nothing in the transaction here involved that could be interpreted as the extension or maintenance of credit by Walston to or for the benefit of Taylor, contrary to either the letter or the spirit of the Securities Exchange Act of 1934 or any of the regulations created pursuant thereto. Only owners of Redman stock were entitled to the stock and cash dividends and Taylor had removed himself from that category by selling his 100 shares before the dividends were even declared. His refusal upon demand to relinquish the shares and cash dividends constituted a conversion for which he was liable. Ligon v. E. F. Hutton & Co., 428 S.W.2d 434 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). Taylor reminds us of the rule of supremacy of federal law over state law, but the federal cases he cites, which appear in the footnote,[2] do not assert a rule contrary to our holding in *Ligon.* His first point of error is overruled.

■ In his second point of error the appellant contends that this action is barred by the two-year statute of limitations, Vernon's Tex.Rev.Civ.Stat.Ann. art. 5526 (1958), in that the cause of action accrued by April 26, 1968, and the suit was not brought until April 12, 1971. The trial court concluded that the cause of action accrued when Walston received Taylor's letter of July 21, 1969, rejecting Walston's demand for the 66 dividend shares of Redman stock and closing his account with Walston. This letter was in response to a telegram from Walston advising Taylor that his account was being charged with the 66 shares. We cannot say that the trial court erred in this conclusion.

■ This is a suit for conversion, and Walston's cause of action accrued when the act of conversion was complete. The applicable rule is that when the original possession of the property in question is not wrongful, the statute of limitations does not begin to run until the return of the property has been demanded and refused, or "until the person in possession has unequivocally exercised, over the property, acts of dominion inconsistent with the claims of the owner or the person entitled to possession." 14 Tex.Jur.2d Conversion § 76 at 65 (1960); Southwestern Bell Tel. Co. v. Commercial Metals Co., 389 S.W.2d

2. In re Naftalin & Co., 315 F.Supp. 463 (D. Minn.1970); Avery v. Merrill Lynch, Pierce, Fenner & Smith, 328 F.Supp. 677 (D.D.C. 1971); Pearlstein v. Scudder & German, 429 F.2d 1136 (2d Cir. 1970), cert. den., 401 U.S.

1013, 91 S.Ct. 1250, 28 L.Ed.2d 550, on remand, 335 F.Supp. 83 (S.D.N.Y.1971); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967).

116, 119 (Tex.Civ.App.—Houston 1965, no writ).

It is obvious from the record that the trial judge concluded that Walston's telegram and Taylor's letter of July 21, 1969 constituted the requisite demand and refusal to start the running of limitations, and that nothing occurred earlier which would have that effect. This conclusion finds ample support in the evidence and we should affirm it in the absence of some compelling reason for not doing so. No such reason appears.

■ Taylor testified that when he received his monthly statement from Walston for December 1968 "there was an appearance there of a charge to my account, which I objected to and wrote a letter to * * * Walston * * * about the end of February or first part of March * * * 1969." A copy of the letter was in evidence and merely states, "I do not understand what is occurring in my account * * *," and requests an explanation. No reply was received. The testimony at most raised a fact issue which was resolved by the trial court against Taylor. It was wholly inadequate to require the trial court or this court to hold as a matter of law that Walston's cause of action accrued at a date earlier than July 1969.

Both points of error are overruled and the judgment appealed from is affirmed.